**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL CASE NO. |
| | : | 3:19cr74 (JCH) |
| v. | : | |
| | : | |
| LLIVER ABREU-BAEZ | : | May 31, 2022 |
|     Defendant. | : | |

**RULING RE: MOTION FOR COMPASSIONATE RELEASE (DOC. NO. 2084) AND MOTIONS TO SEAL (DOC. NOS. 2135 & 2148)**

Lliver Abreu-Baez, a defendant sentenced by this court and currently serving that sentence with the Bureau of Prisons ("BOP"), has moved for "immediate release" from the BOP. See Mot. for Compassionate Release at 18 (Doc. No. 2084). Mr. Abreu-Baez seeks relief under the First Step Act as amended with regard to compassionate release. As is required for compassionate release under section 3582(c)(1)(A)(i) of title 18 of the United States Code, Mr. Abreu-Baez has exhausted his administrative remedies. Id. at 2; see also Supplement to Motion for Compassionate Release at Ex. B (Doc. No. 2113-1) ("Supplement").[1]

Mr. Abreu-Baez first argues that there are extraordinary circumstances which justify his immediate release. See Mot. for Compassionate Release at 3-14. He rests his argument upon the COVID-19 pandemic and, more particularly, the virus's presence in BOP facilities, including Fort Dix where he is incarcerated. Id. at 6-14. He argues that he is at a high risk from contracting COVID-19. Id. at 4-5. Further, he cites medical

---

[1] The court appointed counsel for Mr. Abreu-Baez, in connection with his pro se Motion for Compassionate Release (Doc. No. 2084). Counsel subsequently submitted a Supplement to Mr. Abreu-Baez's Motion for Compassionate Release (Doc. No. 2133).

conditions he has which, if he contracts the virus, will put him at high risk of serious injury or death.  Id.  In his Motion, Mr. Abreu-Baez attests that he suffers from hypertension (high blood pressure), a documented possible comorbidity for COVID-19.  Id.  However, a review of Mr. Abreu-Baez's medical records reveals only that Mr. Abreu-Baez self-reported high blood pressure, although he denied taking any medications for the condition.  See Medical Records at 8 (Doc. No. 2134).  Most empirical measures of Mr. Abreu-Baez's blood pressure in the record fall below a hypertensive range under CDC-recognized guidelines.  Id. at 6 (122/77 on June 16, 2021), 13 (117/79 on July 26, 2021); see also Gov't Medical Records at 29 (125/83 on December 30, 2021) (Doc. No. 2147).[2]  Only his December 30, 2021 diastolic blood pressure reading of 83 meets the CDC's accepted benchmark for a diagnosis of hypertension. See High Blood Pressure Symptoms and Causes, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/bloodpressure/about.htm (last visited May 25, 2022) (medical providers may diagnose hypertension when an individual's blood pressure is "consistently 130/80 mmHg or higher.") (emphasis added).

---

[2] The CDC recognizes two scales for diagnosing high blood pressure, the more conservative of which is the 2017 American College of Cardiology/American Heart Association Guideline for the Prevention, Detection, Evaluation, and Management of High Blood Pressure in Adults. See High Blood Pressure Symptoms and Causes, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/bloodpressure/about.htm (last visited May 25, 2022).  Under these guidelines, normal blood pressure level is below 120/80 mmHg. Id.

In a blood pressure reading, the first number, here 120, denotes a person's systolic blood pressure, while the second number, here 80, indicates a person's diastolic blood pressure. A systolic reading of less than 120 and a diastolic reading of less than 80 falls within a "normal" range. A systolic reading between 120 and 129 and a diastolic reading of less than 80 falls within the "elevated" range, but below the range for a diagnosis of hypertension.  Id.  Healthcare professionals following the 2017 guidelines diagnose patients with hypertension if their blood pressure is "consistently 130/80 mmHg or higher."  Id.  The record does not reflect that Mr. Abreu-Baez's blood pressure "consistently" exceeded this benchmark.

Under the CDC guidelines for COVID-19 risk factors, Mr. Abreu-Baez could possibly be at an elevated risk should he contract COVID-19 based upon his purported hypertension.  See COVID-19, People with Certain Medical Conditions, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated May 2, 2022). However, the government, in its Opposition, notes that Mr. Abreu-Baez has been fully vaccinated against COVID-19.  See Opp. to Mot. for Compassionate Release at 1 (Doc. No. 2174) (hereinafter "Opp."); see also Gov't Medical Records at 3 (noting that as of December 31, 2021, Mr. Abreu-Baez had received one dose of the vaccine).

Numerous courts have held that an inmate does not present "exceptional circumstances" on the basis of medical conditions which raise the risk if COVID-19 is contracted, when that inmate has been fully vaccinated against the virus.  See United States v. Poupart, No. 3:11-CR-116, 2021 WL 917067, at *1 (D. Conn. Mar. 10, 2021) ("[t]he opportunity for . . . inmates to opt to receive the COVID-19 vaccine represents a sea change from their previous COVID-19 vulnerability . . . . Evidence that a defendant has been offered the vaccine . . . demonstrates that he had the ability and opportunity to take measures to markedly reduce his risk of severe illness or death from COVID-19") (internal citation omitted); United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an "extraordinary and compelling" reason for immediate release "); United States v. Kosic, No. 18 CR. 30 (PAC), 2021 WL 1026498, at *2 (S.D.N.Y. Mar. 17, 2021) ("courts in this [C]ircuit have found that vaccination mitigates the risk an inmate faces from COVID-19 to the point that his health conditions

3

weighing in favor of release are no longer extraordinary and compelling.") (collecting cases); United States v. Brown, No. 1:18-CR-00339-PAC-3, 2021 WL 5233506, at *3 (S.D.N.Y. Nov. 10, 2021) ("the mass-release of vaccinations in the past months have dulled the threat of severe complications or death from COVID-19 and its variants. . . . With these vaccines, the abstract threat of COVID-19 is no longer commonly accepted as a justification for compassionate release.") (collecting cases); see also Benefits of Getting Vaccinated, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html (last updated Apr. 27, 2022). The CDC has found that vaccinated persons are 2.3 times less likely to test positive for COVID-19 and 10 times less likely to die after contracting the virus. See Rates of COVID-19 Cases and Deaths by Vaccination Status, CTRS. FOR DISEASE CONTROL & PREVENTION, https://covid.cdc.gov/covid-data-tracker/#rates-by-vaccine-status (last visited May 25, 2022). Thus, given that Mr. Abreu-Baez has been vaccinated, it is the court's view that, even if he had hypertension, he has failed to demonstrate extraordinary and compelling reasons for a sentence reduction under the Compassionate Release Statute as modified by the First Step Act. See 18 U.S.C. § 3582(c)(1)(A)(i).[3]

Because Mr. Abreu-Baez has not shown extraordinary and compelling reasons, the court need not address the 3553(a) factors.[4] Thus, for the foregoing reasons, the

---

[3] It further bears noting that, at the time the government filed its Opposition, it reported that there were 136 active COVID cases among inmates at the facility at which Mr. Abreu-Baez is housed. Currently, at that facility, Fort Dix, there are no infected inmates. See COVID-19, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/index.jsp (last visited May 25, 2022).

[4] While the harsh reality of BOP conditions during the pandemic has spurred this and other courts to grant compassionate release to many inmates, Mr. Abreu-Baez received a sentence that was below the guideline range and accurately reflected the seriousness of the criminal conduct in which he engaged.

4

court denies the Motion for Sentence Reduction (Doc. No. 2084).  However, the court grants both the defendant's and the government's Motions to Seal (Doc. Nos. 2135 & 2148), because good cause exists to protect the defendant's confidential medical records.

**SO ORDERED.**

    Dated at New Haven, Connecticut, this 31st day of May, 2022.

                                                  /s/ Janet C. Hall
                                           Janet C. Hall
                                           United States District Judge

---

<u>See</u> Judgment (Doc. No. 2023).  Mr. Abreu-Baez supplied a co-defendant and distributer, Larry Hall, with kilogram quantities of heroin.  <u>See</u> Amended Presentence Investigation Report at ¶ 18 (Doc. No. 2028).  Thus, even if Mr. Abreu-Baez were to have presented extraordinary and compelling reasons for a sentence reduction, it is unlikely that the court would have reduced his sentence in light of the seriousness of the offense, one of the 3553(a) factors.